J. S17005/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES EARL DORSEY, | : | |
| | : | |
| Appellant | : | No. 270 WDA 2014 |

Appeal from the PCRA Order January 28, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division No(s).: CP-02-CR-0002674-1995
CP-02-CR-0003678-1995

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED MARCH 30, 2015**

Appellant, James Earl Dorsey, appeals from the order entered in the Allegheny County Court of Common Pleas denying, after an evidentiary hearing, his third Post Conviction Relief Act[1] ("PCRA") petition as untimely. He argues that (1) his petition was timely filed pursuant to the "after discovered facts" exception[2] to the PCRA, (2) newly discovered evidence

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 42 Pa.C.S. § 9545(b)(1)(ii).

warrants an award of a new trial, and (3) he presented a cognizable **Brady**[3]

claim. We affirm.

A prior panel of this Court summarized the procedural posture and

facts of this case as follows:

> A jury convicted Appellant and his co-defendant (Lawrence Fisher) of first-degree murder, aggravated assault, criminal conspiracy and three counts of recklessly endangering another person (REAP). The sentencing hearing was conducted on May 1, 1996 . . . . [T]he trial court sentenced Appellant to life imprisonment for first-degree murder with a concurrent term of five to twenty years on the aggravated assault conviction. No further penalty was imposed on the remaining counts. We affirmed the judgment of sentence on April 17, 1998. **Commonwealth v.** [ ] **Dorsey**, 718 A.2d 340 (Pa. Super. 1998). Subsequently, on September 1[0], 1998, the Supreme Court of Pennsylvania denied allowance of appeal. **Commonwealth v. Dorsey**, 727 A.2d 1117 (Pa. 1998).
>
> The facts underlying [the] appeal unfolded at approximately 12:30 p.m. on January 29, 1995, in the City of Homestead. Dwayne Hudgins (the victim) and Richard Marlon Epps were traveling in the victim's vehicle. They stopped on Sylvan Way to talk to Raheem and Artis Anderson. Appellant and his co-defendant (Lawrence Fisher) pulled up behind the victim's vehicle in an automobile owned by Appellant. Artis Anderson went up to Appellant's vehicle and pointed a handgun at Appellant and his co-defendant. Words were exchanged. Appellant and his co-defendant passed the victim's vehicle, stopped at the end of the alley, got out of their own vehicle, then got back in and drove away. Appellant entered the driver's side of the vehicle. **See Commonwealth v. Dorsey**, No 1101 Pittsburg 1996, unpublished memorandum at 1 (filed April 17, 1998).

---

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

Raheem and Artis Anderson then entered the [victim's] vehicle to be driven to Raheem's car. As they approached the area where Raheem's car was parked, they observed the Dorsey vehicle [Appellant's vehicle] coming towards them. They turned and the Dorsey vehicle followed. Shots were then fired from the Dorsey vehicle towards the [victim's] vehicle and a chase ensued. Both Raheem Anderson and Marlon Epps identified [Appellant's co-defendant] as the person they saw leaning out of the passenger side of the Dorsey vehicle firing a large handgun. Neither of the Commonwealth witnesses, however, could positively identify the driver as being [Appellant]. They could only say that they assumed it was [Appellant] driving the car because they had moments earlier seen him in the car with [Appellant's co-defendant].

As they turned down West Street toward the police station, a last shot was heard. The rear window was shattered, Artis Anderson shouted "He's hit" and the vehicle hit a curb and came to a stop at the intersection of West Street and Eighth Avenue. Artis Anderson and Raheem Anderson fled the area but Marlon Epps remained and told the first police officers on the scene what happened. [The victim] was taken to the Hospital where he later died. An autopsy revealed that he had died from a single bullet wound that entered the back of his head and exited the front, above his left eyebrow.

Testing by the Allegheny County Crime Lab revealed that a bullet found in the [victim's vehicle] was fired from either a .41 or a .44 caliber weapon. Lead fragments that had been taken from the wound to the victim's head were too small for comparison with the bullet found in the car. Testing for gunshot residue on the hand of the victim was negative, indicating that he had not recently fired a weapon.

The Commonwealth also presented the testimony of Carl Sullivan who said that [Appellant] had admitted to him that he was driving the car

> involved in this incident. [Appellant] did not tell Sullivan the name of the shooter.

*Id.* at 1-2 (quoting Trial Court Opinion, 7/9/97, at 2-4).

> On September 8, 1999, Appellant filed a timely first PCRA petition on a *pro se* basis. The PCRA court appointed counsel to represent Appellant. Counsel filed an amended petition on November 21, 2001. Two separate hearings were conducted in the matter. The PCRA court dismissed Appellant's petition on November 19, 2004, and Appellant's timely notice of appeal followed.

*Commonwealth v. Dorsey*, 2222 WDA 2004 (unpublished memorandum at 1-4) (Pa. Super. July 28, 2006) (footnote omitted).

Another panel of this Court summarized the subsequent procedural history of this case:

> [T]his Court affirmed the PCRA court's decision. [*Id.*] This Court then denied Appellant's subsequent Application for Reargument Before the Court *En Banc*. **See Commonwealth v. Dorsey**, 909 A.2d [869 Pa. Super. 2006]. Our Supreme Court denied Appellant's subsequent petition for allowance of appeal. **Commonwealth v. Dorsey**, [ ] 920 A.2d 831 ([Pa.] 2007).

> On April 10, 2007, Appellant filed a *pro se* Petition for Writ of *Habeas Corpus* in the United States District Court for the Western District of Pennsylvania. On July 30, 2008, the Western District Court dismissed Appellant's Petition and denied his request for a certificate of appealability. **Dorsey v. Wilson**, Civil Action No. 07-509, Not Reported in F. Supp. 2d, 2008 WL 2952892 [ ] (W. D. Pa. 2008).

> Appellant appealed. The Third Circuit denied Appellant's request for a Certificate of Appealability and Appellant's subsequent Petition for Rehearing.

> On May 27, 2009, Appellant filed a writ of *certiorari* with the United States Supreme Court. On October 5, 2009,

> the United States Supreme Court denied the petition. ***Dorsey v. Coleman***, 130 S.Ct. 99 (2009). On November 30, 2009, the United States Supreme Court denied Appellant's petition for Rehearing. ***Dorsey v. Coleman***, 130 S.Ct. 786 (2009).
>
> Appellant filed his second [ ] PCRA petition, *pro se*, on August 24, 2010. On September 17, 2010, the PCRA court filed a notice of intent to dismiss the petition. PCRA Court Order, 9/17/10. On October 14, 2010, Appellant filed a Response to the Notice of Intent to Dismiss. The PCRA court denied Appellant's PCRA petition on November 1, 2010.

***Commonwealth v. Dorsey***, 1804 WDA 2010 (unpublished memorandum at 2-3) (Pa. Super. Jan. 6, 2012) (footnote omitted).

Appellant appealed and this Court affirmed the PCRA court. ***Id.*** Appellant filed a *pro se* petition for allowance of appeal on April 2, 2012. Our Supreme Court denied the petition on August 12, 2012. ***Commonwealth v. Dorsey***, 50 A.3d 124 (Pa. 2012).

Counsel for Appellant filed the instant amended third PCRA petition on February 19, 2013. A hearing was held on October 17, 2013. The PCRA court denied the petition and this timely appeal followed. PCRA counsel was permitted to withdraw and new counsel was appointed for purposes of this appeal. Appellant was not ordered to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The PCRA court filed a Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issues for our review:

I. In light of the pleading requirements set forth in Pa.R.Crim.P. 902, was [Appellant's] third PCRA timely filed within 60 days of discovering new exculpatory evidence?

II. Considering the circumstantial trial evidence supporting [Appellant's] conviction, did the PCRA court err in finding that [Appellant's] newly discovered evidence would not likely compel a different verdict?

III. Did [Appellant] present sufficient evidence to prove a *Brady* violation?

Appellant's Brief at 4.

Appellant argues that the instant PCRA was timely based upon newly discovered exculpatory evidence, *i.e.*, two new fact witnesses.[4] *Id.* at 19. He contends that he presented an affidavit from Richard B. McDonald, dated November 2, 2010. He avers he filed his *pro se* third PCRA petition on December 17, 2010.[5] *Id.* at 19-20. Therefore, he argues, the instant PCRA petition was timely. *Id.* at 23.

---

[4] Appellant refers to Brian O'Toole as the second witness in the statement of fact section of his brief. Appellant's Brief at 10. He references O'Toole's affidavit, dated October 16, 2011. *Id.* He states in the argument section that "the **timeliness of O'Toole's information is of no moment** because O'Toole's affidavit is merely for supplementary purposes—a bolstering amendment to [Appellant's] otherwise timely filed third PCRA." Appellant's Brief at 23 n.10. Appellant does not present any argument regarding this witness in support of the timeliness of his PCRA petition.

[5] We note that the docket indicates that Appellant filed a document entitled "Amendment to application for/remand to have newly discovered evidence reviewed" on December 17, 2010. This document is not in the certified record on appeal. The PCRA court states that the November 2, 2010 McDonald Affidavit was attached to Appellant's December 17th filing. PCRA Ct. Op., 6/28/14, at 6. Appellant refers to this as an "interim third PCRA." Appellant's Brief at 9. On January 21, 2011, the PCRA court stayed the

This Court has stated:

> In reviewing the propriety of an order denying PCRA relief, this Court is limited to examining whether the evidence of record supports the determination of the PCRA court, and whether the ruling is free of legal error. Great deference is given to the findings of the PCRA court, which may be disturbed only when they have no support in the certified record.

***Commonwealth v. Perry***, 959 A.2d 932, 934-35 (Pa. Super. 2008)

(citations omitted).

As a prefatory matter, we determine whether Appellant's PCRA petition

is timely.

> Our Supreme Court has stressed that "[t]he PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed."[ ] ***Commonwealth v. Abu–Jamal***, . . . 941 A.2d 1263, 1267–68 ([Pa.] 2008) (citation omitted). ***See Commonwealth v. Monaco***, . . . 996 A.2d 1076, 1079 (Pa. Super. 2010) . . . . It is well settled that "[a]ny and all PCRA petitions must be filed within one year of the date on which the petitioner's judgment became final, unless one of three statutory exceptions applies." ***Commonwealth v. Perrin***, 947 A.2d 1284, 1285 (Pa. Super. 2008) . . . . "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

---

"PCRA petition" pending the outcome of the appeal to this Court from the second PCRA. The PCRA court states: [t]he stay was lifted when the Pennsylvania Supreme Court denied [Appellant's] Petition for Allowance of Appeal in September 2011." PCRA Ct. Op., 6/28/14, at 6 n.3. On February 19, 2013, the instant amended PCRA was filed by appointed counsel.

*Commonwealth v. Garcia*, 23 A.3d 1059, 1061-62 (Pa. Super. 2011).

The timeliness exceptions to the PCRA requirements are set forth in 42 Pa.C.S. § 9545, which provides in pertinent part:

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> \* \* \*
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]

42 Pa.C.S. § 9545(b)(1)(ii). A PCRA petition raising any exception "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

This Court has stated:

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. *Commonwealth v. Bennett*, [ ] 930 A.2d 1264, 1271 ([Pa.] 2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. *Commonwealth v. Carr,* 768 A.2d 1164, 1168 (Pa. Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. *Commonwealth v. Breakiron*, [ ] 781 A.2d 94, 98 ([Pa.] 2001); *Commonwealth v. Monaco*, 996 A.2d 1076, 1080 (Pa. Super. 2010), *appeal denied*, [ ] 20 A.3d 1210 (2011). This rule is strictly enforced. *Id.* Additionally, the focus of this exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Marshall*, [ ] 947 A.2d 714, 720 ([Pa.] 2008). . . .

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. ***Bennett***, [ ] 930 A.2d at 1270. "This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'" ***Id.*** Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii); ***Bennett***, ***supra***. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia*, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

***Bennett***, [ ] 930 A.2d at 1272 (internal citations omitted) (emphasis in original). Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim. ***Id.*** [ ] 930 A.2d at 1271.

***Commonwealth v. Brown***, ____ A.3d ____, ____, 2015 WL 500891 at *4-5

(Pa. Super. 2015) (emphases in original).

In the instant case, Appellant's judgment of sentence became final on December 9, 1998, which marked the expiration of the ninety-day time period for seeking *certiorari* in the United States Supreme Court after the Pennsylvania Supreme Court declined to hear Appellant's appeal on September 10, 1998. **See** 42 Pa.C.S. § 9545(b)(3). Appellant then had generally one year within which to file his PCRA petition. The instant PCRA petition, filed on February 19, 2013, is patently untimely. **See** 42 Pa.C.S. § 9545(b)(1).

Appellant contends that the PCRA petition is timely because he filed it within sixty days of his receipt of the McDonald affidavit. The affidavit was attached to Appellant's *pro se* filing which is not included in the certified record.[6] Appellant has the burden of ensuring "the record certified on appeal is complete in the sense that it contains all of the material necessary for the reviewing court to perform its duty." **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*). "If a document is not in the certified record then this Court cannot take it into account." **Commonwealth v. Walker**, 878 A.2d 887, 888 (Pa. Super. 2005). Our Supreme Court has held "that where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been

---

[6] We note the PCRA court refers to the affidavit. **See** PCRA Ct. Op., 6/28/14, at 6.

transmitted to the Court." Pa.R.A.P. 1921 note (citing **Commonwealth v. Brown**, 52 A.3d 1139, 1145 n.4 (Pa. 2012)).

Instantly, there is no reproduced record. The Commonwealth, however, has recited the contents of the affidavit in its brief, and Appellant has not disputed it. We will consider the affidavit, which states:

> Before me, the undersigned authority notary public, personally appeared Richard B. McDonald of 1512 Hays Street, Homestead, PA 15120 who being duly sworn, doth depose and say that he witnessed Dwayne . . . Hudgins and Paul Alexander arguing with each other on the corner of 11th Ave and West Street, Homestead PA 15210. He saw the shooting happen.
>
> Richard B. McDonald has information and needs to speak further on this matter.
>
> He states he is now coming forward because he is making changes in his life and through his religion and faith in God. He is now saved and had to get the demons out and further deponent sayeth not.

Commonwealth's Brief at 13.

At the PCRA hearing, Mr. McDonald testified, *inter alia*, as follows:

> [Defense Counsel]: Now, we understand that you met [Appellant] in prison. Did you talk to him about his case in Homestead, the homicide?
>
> A: No. I really didn't talk about it, but I told him I had a little bit of information about that they were my best friends, the guys that got killed.
>
>      *   *   *
>
> Q: So the victim was your best friend?
>
> A: Yes.

Q: So you told [Appellant] you had information, but did you tell him what the information was?

A: No. I told him I didn't want him to get into it right then and there. I would think about it and talk to him when it was older.

The Court: When was this [Counsel]? Ask him.

Q: Do you know what that was, what year?

A: When I was incarcerated[.]

Q: Yes.

A: Had to be—I was up there twice. In 2006, and then I maxed out in 2009. It had to be in 2007 or 2008.

\* \* \*

The Witness: I'll say 2008.

\* \* \*

Q: So you didn't tell him the details?

A: No, I did not.

Q: So when you got out, who did you contact?

A: Well, it was a while before I seen his uncle, and we was talking about he was going to trial, would I help him out, and I said yeah, I would, because it's been like for so long gone on, and I'm pretty much the only witness that ever came forth.

Q: Well, he wasn't going to trial. His trial was in 1996.

A: Okay.

\* \* \*

Q: Why did you finally decide it was okay to talk about this then?

A: Because it's been on my conscious [sic] for years, and I never want to talk to it because the guy I saw in the car was related to me.

Q: Who did you see in the car?

A: His name is Tinker.  That's his nickname.

The Court: T-I-N-K-E-R?

The Witness: Yes, sir.  His real name is Paul Alexander.

Q: How are you related to Paul Alexander?

A: He is on my dad's side, my cousin.

*    *    *

Q: Now, why was it that you were finally willing to say that you saw Paul Alexander in the car?

*    *    *

A: I don't know.  Because I'm changed today.  I'm different.  I feel that it been heavy on me for years, and plus I met this guy in church.  **And I know he wasn't in this car.  We happen to talk about that while he was in jail**, what his case was and how I'm like, man, I said, I got some information on that.

*    *    *

Q: Is Paul Alexander still around?

A: No. . . .  He got shot like five times or something.  I think that was about 2007 or—I can't remember exact years . . . .

N.T., 10/17/13, at 15-17, 18, 20-21 (emphasis added).

On cross-examination, Mr. McDonald testified, *inter alia*, as follows:

[The Commonwealth]: Then so in 2008, you meet [Appellant]?

A: No, I saw [Appellant] in jail before 2008. I was up there in 2006. I think merged up there or something. They was already up there, and I never talked to him until like years later as far as when we was going to church. I never joined a church as I was getting ready to go home.

Q: So at that point you tell him you have information, right?

A: Yeah. We were talking in church about, you know, our prior—what we did. Why we're in jail and stuff, and he was telling me about the incident in Homestead, and I'm like, whoa. That's my best friend, you know what I'm saying. But I knew who did this. And I never told him I knew that at all.

Q: Didn't you go and write an affidavit in 2010, right?

A: Yeah.

Q: Because now your cousin's dead.

A: Yeah, pretty much, because pretty much not going to be too much consequences. . . .

*Id.* at 26-27.

Although Appellant testified at the PCRA hearing, he did not testify regarding Mr. McDonald. *See* N.T. at 31-32.

The PCRA court opined:

[Appellant] also claimed that he was entitled to relief on the basis of two after discovered witnesses, Richard B. McDonald and Brian O'Toole. At the hearing, Mr. McDonald testified that he met [Appellant] sometime in 2007 or 2008. He could not specify when that occurred beyond narrowing it to those two years. According to Mr. McDonald, he told [Appellant] he had information for him, but did not tell him what the information was. Mr.

- 14 -

> McDonald ultimately signed an affidavit on November 2, 2010. This affidavit was attached to [Appellant's] *Pro Se* Petition filed December 17, 2010. **[Appellant] did not testify as to when the information set forth in McDonald's affidavit was provided to him.**
>
> \* \* \*
>
> [Appellant] has not met his burden of proving that he filed either of the after discovered evidence claims within sixty days of the date that the facts upon which those claims were predicated became known to him. . . .

PCRA Ct. Op., 6/28/14, at 5-6 (emphasis added). The PCRA court opined that the claims raised by Appellant in his PCRA petition were denied because they were not timely. *Id.* at 3.

With respect to Appellant's claims regarding Mr. McDonald, Appellant failed to plead and prove why he could not have discovered such information by acting with due diligence. *See* 42 Pa.C.S. § 9545(b)(1)(ii); *Brown*, \_\_\_ A.3d \_\_\_, \_\_\_, 2015 WL 500891 at \*4-5.

Appellant argues that he "presented a cognizable *Brady* claim for the reasons set forth in *Lawrence Fisher v. Warden Somerset SCI, No. 13-3833* (3rd Cir., Nov. 5, 2014)."[7] Appellant's Brief at 26. He claims he could not have ascertained the fact that "the Commonwealth suppressed exculpatory evidence against him as is necessary to afford relief under

---

[7] Appellant relies upon the dissenting opinion of Judge Roth in *Fisher* wherein the court stated that the failure of the prosecution to inform his co-defendant Fisher of the status of Epps' charges constituted a *Brady* violation. Appellant's Brief at 28.

*Brady*." *Id.* at 26-27. Appellant avers because he was incarcerated, he lacked access to the public records evidencing Epps' plea and sentence. *Id.* at 27.

Appellant's claim that because he was incarcerated he could not have ascertained the facts of Epps plea and sentence is unavailing. Our Pennsylvania Supreme Court "has held that, for purposes of 42 Pa.C.S. § 9545(b)(1)(ii), information is not 'unknown' to a PCRA petitioner when the information was a matter of public record." *Commonwealth v. Chester*, 895 A.2d 520, 523 (Pa. 2006).

Appellant's reliance upon the dissenting opinion of Judge Roth in *Lawrence*, *supra.*, is unavailing. This Court has "expressly rejected the notion that judicial decisions can be considered newly discovered facts which would invoke the protections afforded by [the PCRA]." *Commonwealth v. Cintora*, 69 A.3d 759, 763 (Pa. Super.), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Appellant did not plead and prove any exception to the PCRA's timeliness requirement. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii); *Brown*, ___ A.3d ___, ___, 2015 WL 500891 at *4-5. Thus, the PCRA court did not err in denying his PCRA petition as untimely. *See Garcia*, 23 A.3d at 1061-62.

Order affirmed.

Judge Shogan joins the memorandum.

President Judge Gantman concurs in the result.

- 16 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2015